LIETZ CO. *v.* UNITED STATES (No. 2178).[1]

1. "MOUNTINGS," PARAGRAPH 94, TARIFF ACT OF 1913.

The provision of paragraph 94, tariff act of 1913, for "mountings" for "surveying instruments," etc., includes such nonoptical accessories as are mounted upon the instruments, and is not limited to the parts whereby they are supported thereon.

2. SPIRIT LEVELS FOR SURVEYORS' TRANSITS.

Spirit levels for surveyors' transits are classifiable as mountings for surveyors' instruments under paragraph 94, tariff act of 1913, rather than as blown-glass articles under paragraph 84.

---

[1] T. D. 39434.

United States Court of Customs Appeals, January 22, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8538 (T. D. .39135).

[Reversed.]

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellant.

*William W. Hoppin,* Assistant Attorney General (*Bernard Hahn,* special attorney, of counsel), for the United States.

[Oral argument November 21, 1922, by Mr. Hoppin.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Presiding Judge, delivered the opinion of the court:

The merchandise now upon appeal consists of so-called spirit levels. These are small blown-glass tubes, closed at both ends and etched with a graduated scale. They are filled with a clear liquid, and contain a floating bubble of air. Blown glass is concededly the component material of chief value in the article. The levels were imported for use in the manufacture of surveyors' transits, of which they become essential parts. It appears that each transit is equipped with a telescope level and with one or two plate levels. These are held in place by means of brass tubes which are fastened by screws or plaster of Paris to the telescope and base plate of the instrument. They serve as a means of adjusting the transit however it may be put to use.

The present importations consisted of eight different sizes of levels; all of them were ordered by specifications for particular sizes of transits. The chief use of the articles is in the equipment of transits; this in fact is the only commercial use of the larger sizes, the three smaller sizes, however, find a limited use in the manufacture of carpenters' levels.

The articles were classified for duty under the general provisions for all articles of every description composed wholly or in chief value of glass blown, either in a mold or otherwise, contained in paragraph 84 of the tariff act of 1913; and accordingly they were assessed with duty at the rate of 45 per cent ad valorem.

The importers protested against the assessment, claiming duty at the rate of 25 per cent ad valorem under the provisions for surveying instruments and frames and mountings for the same in paragraph 94 of the act.

The protest was submitted to the board and was overruled. From that decision the importers appeal.

The competing paragraphs read as follows:

84. Glass bottles, decanters, and all articles of every description composed wholly or in chief value of glass, ornamented or decorated in any manner, or cut, engraved, painted, decorated, ornamented, colored, stained, silvered, gilded, etched, sand blasted, frosted, or printed in any manner, or ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), and all

articles of every description, including bottles and bottle glassware, composed wholly or in chief value of glass blown either in a mold or otherwise; all of the foregoing, not specially provided for in this section, filled or unfilled, and whether their contents be dutiable or free, 45 per centum ad valorem: *Provided*, That for the purposes of this act, bottles with cut-glass stoppers shall, with the stoppers, be deemed entireties.

94. Surveying instruments, telescopes, microscopes, photographic and projection lenses, and frames and mountings for the same, 25 per centum ad valorem.

It must of course be conceded that surveyors' transits are "surveying instruments" within the intent of paragraph 94, supra. Therefore if the imported levels are "mountings" for the transits they should be classified and assessed with duty as such under paragraph 94, even though they also respond to the description of articles manufactured in chief value of blown glass, contained in paragraph 84. For the former classification is manifestly the more specific of the two. The sole question therefore is whether the levels are transit mountings.

The record contains no testimony tending to prove an exclusively commercial use of the word "mountings" in the trade; we must therefore assume that the word was used in the act according to its common and ordinary acceptation.

We copy for reference some relevant definitions taken from standard authorities:

Standard Dictionary:

Mounting. 2. That by means of which anything is prepared for use, preservation, examination, exhibition, or ornament; equipment; embellishment.

(Idem):

Surveyor's transit (same as transit-compass). A surveying instrument resembling a theodolite, for measuring angles: Consisting of a horizontal graduated circle, with leveling devices, a compass, a telescope, etc. (Illustration shows telescope and plate levels.)

Webster's Dictionary:

Mounting. 2. That which serves as a mount or by which anything is prepared or equipped for use, or set off to advantage; equipment; embellishment; setting; as the *mounting*, or nonoptical parts (pier axes, circles, tubes, etc.) of a telescope, sword, diamond, gun, or picture.

Oxford Dictionary:

Mounting. c. That which is or may be mounted for use or ornament (*Cent. Dict.*).

Knight's Mechanical Dictionary:

Transit. 2. (Engineering.) The surveyor's transit is a portable instrument of the theodolite kind, designed for measuring both horizontal and vertical angles. It is provided with horizontal and vertical circles, one or two levels, and a compass, and is mounted upon a tripod-stand.

It seems to us that the foregoing definitions effectually authorize the conclusion that the word "mountings," when applied to sur-

veyors' transits, includes the glass levels now in question, for they are essential parts of the equipment which must be attached to such instruments in order to fit them for their intended use.  We think that the term "mountings" includes such nonoptical accessories as are mounted upon the instruments, and is not limited to the parts whereby they are supported thereon.  The occurrence of the general term "equipment" in the definitions above given indicates that parts like these when attached to the instruments are mountings, equally with the means whereby they may be attached thereto.

This conclusion is supported by former decisions of this court in analogous cases.

In United States *v.* Sheldon & Co. (9 Ct. Cust. Appls. 153, T. D. 37994) the word "mountings," as used in relation to opera glasses in paragraph 93 of the same act, was held to include certain mother-of-pearl staves and name rings designed for the embellishment of such articles.

In United States *v.* International Forwarding Co. (id. 156, T. D. 37995) the merchandise consisted in part of certain polariscope tubes which were specially designed glass tubes, in varying lengths, for holding liquids to be examined in polarized light, attached to which were metal ends in which were screwed brass attachments containing glass disks.  It became necessary in the case for the court to determine whether these were "mountings" of the polariscopes under paragraph 93 of the act, and it was held that they were such.  In the decision the court said:

From the foregoing it would appear that the word "mountings" when used in connection with optical instruments such as the microscope and polariscope is used in the sense of accessories, adjuncts, or parts thereof, which plainly would include the polariscope tubes here in question.

From the foregoing quotation it seems clear that the present levels which are certainly accessories and adjuncts of surveying instruments, and are necessary parts and equipment for such instruments when in use, should similarly be held as answering to the name of "mountings" for them, under the provisions of paragraph 94. We have examined the case of United States *v.* American Express Company (7 Ct. Cust. Appls., 169, T. D. 36490), which is cited by the Government, but we think it consistent with the conclusions above stated.

The decision of the board is therefore *reversed.*