AMERICAN HOLDING CORP. ET AL. *v.* UNITED STATES (No. 3316)[1]

United States Court of Customs and Patent Appeals, December 1, 1930

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument October 6, 1930, by Mr. Place and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

---

[1] T. D. 44449.

Merchandise, consisting of mechanical devices, essential units or parts of a motion-picture projection mechanism, was assessed for duty by the collector at the port of Chicago as mountings or frames for projection lenses at 45 per centum ad valorem under paragraph 228 of the Tariff Act of 1922.

PAR. 228. Azimuth mirrors, sextants, and octants; photographic and projection lenses, opera and field glasses, telescopes, microscopes, and other optical instruments, and frames and mountings for the same; all the foregoing not specially provided for, 45 per centum ad valorem.

The importers protested, claiming, alternatively, that the merchandise was properly dutiable either as parts of "all other machines" at 30 per centum ad valorem under paragraph 372, or as articles of metal, not specially provided for, at 40 per centum ad valorem under paragraph 399. The pertinent parts of paragraphs 372 and 399 are as follows:

PAR. 372. * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: * * *

PAR. 399. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

The device in question is associated with an upper and a lower magazine, a lamp house, which furnishes the necessary light and directs its beams through the involved device, a set of projection lenses, mounted in cylindrical metal tubes or barrels, which in turn are mounted in metal holders or frames attached to the involved device, and an electric motor. It consists, generally speaking, of a metal frame, to which are attached "sprockets or shafts"—the function of which is to move the film from the upper magazine in a downward direction intermittently through the rays of light to the lower magazine, and a shutter unit, which is synchronized with the intermittent sprocket in such a manner as to control the passage of the rays of light from the lamp house to the screen.

The witnesses for the parties are in substantial agreement as to the use and function of the imported article. They agree that it is an essential unit or part of a motion-picture projection device, and that without its presence and aid a motion-picture projection lens can not perform its proper function.

Frank McMillan, testifying for the importers, said:

The object of the intermittent action [produced by the article in question] is to present a succession of photographs, these photographs appearing on the film, and projecting them upon the screen. The film is moved by the intermittent action a certain distance, a distance of the width of the picture, comes to rest, and at the time it comes to rest the light shutter opens and permits the light to pass.

through; as the shutter closes the film moves on to the next picture and so on. That occurs sixteen times a second, so that the eye will see the photograph of something in motion. It is in fact a series of pictures.

The court below held that the involved devices were parts of, or mountings or frames for, projection lenses and, as such, are *eo nomine* provided for in paragraph 228, and more aptly described therein, than as parts of machines, not specially provided for, in paragraph 372.

The protests were, accordingly, overruled.

It is contended by counsel for importers that the articles under consideration are not projection lenses, nor are they frames or mountings for such lenses; that the only articles covered by the statutory terms "frames" and "mountings" for projection lenses, are the cylindrical metal tubes or barrels which hold the lenses in fixed relation, one to another; but that, if such proposed interpretation of the statutory terms is thought to be too narrow, they should, in any event, be so interpreted as to exclude anything farther removed from the lenses than the so-called metal lens holders—the articles in which the lenses and cylindrical metal lens "tubes" or "barrels" are mounted.

In the case of *United States* v. *American Express Co.*, 7 Ct. Cust. Appls. 169, T. D. 36490, this court had under consideration the provision for "optical instruments and frames and mountings for the same" contained in paragraph 93 of the act of 1913, and the provision for "photographic and projection lenses, and frames and mountings for the same," contained in paragraph 94 of that act. In disposing of the issues in that case, the court, among other things, said:

True, the metal tube into which the lens is fitted might be called a mounting or even a frame in the sense that it incloses the lens as a frame incloses a picture. If that restricted meaning, however, is given to the terms "frames" and "mountings" when applied to projection lenses, the same restricted meaning must be given to them when applied to the surveying instruments and telescopes provided for in the same paragraph, *and that we do not think can be done, inasmuch as surveying instruments and telescopes are certainly something more than mere lenses.* (See "Telescope," Standard Dictionary and Encyclopedia Britannica.) *If frames and mountings for surveying instruments and telescopes mean the supporting structure and certain adjuncts of those instruments required for their use, then they must mean the supporting structure and certain adjuncts of a projection lens required for its use.*

In our opinion, the evidence in this case very clearly establishes that the metal support, the reels, the electric lamp, the mirror, the condenser, and the motive machinery are all instrumentalities designed to aid and assist the projection lens in producing on a screen an enlargement of the small pictures on the film, and that without such appliances the projection lens would be wholly ineffective for that purpose. Unquestionably the completed article would be a moving-picture machine and possibly it might be regarded as an optical instrument. Nevertheless, it would be at the same time a projection lens supported by the frame and fitted with the adjuncts which make it available for use. From that it follows that even if the frame here involved be considered as the frame for an optical instrument, it is none the less the frame for a projection lens, and as frames for

projection lenses are provided for in paragraph 94, that provision must be preferred to the less specific and more comprehensive provision in paragraph 93 covering frames for optical instruments. [Italic ours.]

In the case of *United States* v. *International Forwarding Co.*, 9 Ct. Cust. Appls. 156, T. D. 37995, this court reviewed the decision in the American Express Co. case, *supra*, and, in holding that polariscope tubes were dutiable as "mountings" for polariscopes—optical instruments—under paragraph 93 of the Tariff Act of 1913, said:

* * * it would appear that the word "mountings" when used in connection with optical instruments such as the microscope and polariscope is used in the sense of accessories, adjuncts, or parts thereof, * * *

Paragraph 228, *supra*, was considered by this court in the case of *Thomas Co.* v. *United States*, 12 Ct. Cust. Appls. 425, T. D. 40591. In that case the decisions of this court in the *American Express Co.* and the *International Forwarding Co.* cases, *supra*, and the decision in the case of *Lietz Co.* v. *United States*, 11 Ct. Cust. Appls. 426, T. D. 39434, were reviewed and approved. We there said:

In each of the cases referred to the merchandise involved consisted of accessories, adjuncts, or parts of the instruments described in the paragraph under consideration, and each article was designed to be attached to the instrument of which it was an accessory, adjunct, or part, and was further designed as such an essential, or at least as such an important element, as, when attached, it would aid the instrument to perform its proper function.

It is evident from a careful reading of paragraph 228, *supra*, that the word "mountings" as used therein has the same meaning as the word "mountings" as used in paragraph 94 of the Tariff Act of 1913 in so far as the same may "pertain" to microscopes.

Although it is true that, in the *Thomas Co.* case, the prior holdings of this court as to the proper scope to be given the word "mountings" were applied only to "mountings" for "microscopes," provided for in paragraph 228, *supra*, they are equally controlling when applied to "mountings" for "projection lenses," provided for in the same paragraph.

It appears from the record that the involved articles are not only adjuncts of projection lenses and essential to their use in motion-picture projection machines, but the projection lenses, by means of metal lens holders, are designed to be, and are when in use, mounted upon, and operate in conjunction with, them.

It is argued, however, that the completed article, of which the imported merchandise is a part, is a motion-picture machine; and not a projection lens. The completed article may be a motion-picture machine, nevertheless, as was said in the *American Express Co.* case, *supra*, "it would be at the same time a projection lens supported by the frame and fitted with the adjuncts which make it available for use."

We are of opinion that the decisions in the cases hereinbefore referred to are controlling of the issues here; and that the articles in question are *eo nomine* provided for in paragraph 228, and are more specifically provided for therein than as parts of machines in paragraph 372, and we so hold.

The judgment is *affirmed*.