## UNITED STATES v. CAREY & SKINNER (No. 2490)[1]

1. "NOVADELOX"—COAL-TAR PRODUCTS—SEGREGATION—MIXTURES.

A powder known by the trade name of "Novadelox"—mainly used for bleaching flour, a commercially nonseparable mixture of a coal-tar product and another ingredient, such other ingredient being for the purpose of preventing the explosion of the coal-tar product and being detrimental to the use of the bleaching powder—is dutiable under sections 500 and 501 of the act of September 8, 1916, providing for products "obtained, derived or manufactured in whole or in part" from coal tar, according to its weight, and not according to the weight of the coal-tar product only.—*United States* v. *Aetna Explosives Co.*, 9 Ct. Cust. Appls. 298, T. D. 38238, affirmed in 256 U. S. 402, distinguished.

2. CONSTRUCTION, ACT OF SEPTEMBER 8, 1916—ANNUAL REDUCTION OF DUTIES.

The act of September 8, 1916, levying duty on coal-tar products, provides that, after five years from its passage, the duty shall be annually reduced by 20 per centum. Such reduction applies to importations made during the first year after the expiration of the five-year period.

United States Court of Customs Appeals, April 20, 1925

APPEAL from Board of United States General Appraisers, G. A. 8864 (T. D. 40410)

[Reversed and remanded.]

*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument March 27, 1925, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case is known by the trade name of " Novadelox." Its immediate components are benzoyl peroxide, a deriva-

---

[1] T. D. 40863.

tive of coal tar, and calcium phosphate, which is not a coal-tar product. These two constituents, each in the form of a whitish powder of about the same shade of color, are mixed together, but not chemically united in any way, and in that condition imported. In weight, novadelox is composed of about 25 per centum benzoyl peroxide and 75 per centum calcium phosphate. Benzoyl peroxide is of much greater value per pound than calcium phosphate.

The collector assessed duty on the entire weight of the merchandise at the rate of 15 per centum ad valorem and 2½ cents per pound under sections 500 and 501 of the act of September 8, 1916, which may be found in T. D. 36667. Among other things that act provides that duty shall be assessed upon certain and all similar products "obtained, derived, or manufactured in whole or in part" from coal tar.

Importers, while admitting that the net weight of the benzoyl peroxide in the novadelox was dutiable under the statute, protested on the ground that the calcium phosphate content was not so dutiable upon the theory that it was only a packing or filler for the benzoyl peroxide.

The Board of General Appraisers sustained the protest.

No claim was made therein as to how the calcium phosphate, as such, should be classified or assessed, and its tariff status is not discussed by importers in this court.

Benzoyl peroxide is highly inflammable. One of the importers' witnesses, without contradiction, stated in substance that, practically speaking, it was not possible to ship it except in a mixture similar to novadelox unless such precautions were taken as are employed in the shipment of other highly inflammable material. What such precautions are, however, or whether it is practical to employ them in shipping benzoyl peroxide the evidence does not disclose.

The novadelox in its imported condition is used as a bleaching powder, mainly for the purpose of bleaching flour. In that use the presence of the calcium phosphate is of no benefit. It is not desirable because "it gives an addition to the ash content of the flour for which the benzoyl peroxide is used." To what extent, if any, this is detrimental does not appear.

It is possible to separate the benzoyl peroxide from the calcium phosphate after importation, but it would not be commercially practicable so to do.

The Board of General Appraisers in sustaining the protest was of opinion that this case was ruled by our decision in *United States v. Aetna Explosives Co.*, 9 Ct. Cust. Appls. 298, affirmed in 256 U. S. 402. Such is the contention of the importers, and their brief here is practically the opinion of the Supreme Court in that case, which, in substance, is a condensation and repetition of our own.

But we are of opinion that this case is easily distinguished from that and is not governed thereby.

In that case the imported merchandise contained in iron tank cars was composed of nitric and sulphuric acids, neither of which was dutiable, the nitric acid being the commodity which it was desired to import and which it was found could not be obtained in quantities sufficient to meet the current demand therefor in any other practicable manner.

The mixture of those two acids was classified and assessed under paragraph 5 of the act of 1913 as a chemical mixture. That paragraph provided for a duty upon chemical preparations, mixtures, etc. The importer claimed free entry under paragraph 587 of the act, which so provided for both nitric and sulphuric acids.

It appeared that under the regulations of the Interstate Commerce Commission shipment of nitric acid in tank cars was not allowed unless a proportion of sulphuric acid was mixed therewith; that the mixture there in question was made for the purpose of accomplishing an importation of nitric acid only; and that in its imported condition it was not *suitable for use*. So far as appeared it was not an article of commerce.

This court held that the word "mixture" in said paragraph 5, implied a mixture susceptible of commercial use; that the mixture there was in a sense involuntary, because made to comply with governmental regulation, without which, the desired article, nitric acid, could not be obtained; that the result was not a mixture merchantable for use in the United States; that it was not a chemical mixture within the meaning of the paragraph under which it was assessed; that the regulation of the Interstate Commerce Commission could hardly be conceived to intend to impose a tax on goods otherwise free; that in view of the whole case, the imported mixture of the two acids was not dutiable.

In the case at bar, the statute under which the importation was assessed provides, not for a chemical mixture but for products obtained, derived, or manufactured in whole or in part from coal tar, and imposes a duty thereon, both ad valorem and specific. The novadelox answers the call of this provision. It is made in part of a coal-tar product. It is an article of commerce produced and used to such an extent that it has acquired a trade name. As imported, it is ready for use. We think it was properly assessed as an entirety.

It is true that importers' witnesses studiously referred to the calcium content as being a filler or packing for benzoyl peroxide, but such characterization does not determine that it is a filler or packing for tariff purposes, or separately classifiable.

The Supreme Court sustained our judgment in the Aetna Explosives Co. case, upon the theory that the mixture of the two acids there did

not deprive the separate acids of the right of free entry, in view of the fact that they did not interact and that the mixture thereof was merely mechanical, not intended or adapted as such for commercial use, and not a chemical mixture within the true intent of the act under which they were classified by the collector.

In view of the foregoing, it is hardly necessary to point out that in the Aetna Explosives case it was held that a mixture of two acids, neither of which was dutiable, did not render the mixture dutiable, it appearing that such mixture was mechanical, not intended for or adapted to a commercial use and not commercially usable in the condition in which imported.

In this case the statute provides for commodities obtained or manufactured in part or in whole as was the merchandise here. One of its constituent materials is concededly dutiable at the ad valorem rate at which the importation was assessed; as to the other, nothing appears to show whether it is free or dutiable, or the rate thereof if dutiable, and the merchandise itself is commercially used and is adapted for such use in the condition in which imported.

There is another incidental question to be disposed of in this case.

The act of 1916 provided, with reference to the special duty per pound, that "during the period of five years, beginning five years after the passage of this act, such special duties shall be annually reduced by twenty per centum of the rate imposed by this section, so that at the end of such period, such special duties shall no longer be assessed, levied, or collected."

The protest claimed that the specific rate of duty applicable to the net weight of benzoyl peroxide should be 2½ cents per pound, less 20 per centum.

These importations were made in April, 1922, before the end of the first full year after the expiration of the first period of five years mentioned in the statute. For that reason the collector did not allow the 20 per centum reduction from the special duty.

We think, as did the Board of General Appraisers, that any importations made during the first year, after the expiration of such five-year period, were entitled to the benefit of the 20 per centum reduction on the special rate, and, as we understand, the Government now so concedes.

The result is, we hold, that the novadelox imported here is dutiable at the rate of 15 per centum ad valorem as assessed by the collector, and also at the rate of 2½ cents per pound less 20 per centum thereof, on the weight of the entire importation.

The judgment is, therefore, reversed and the cause remanded for further proceedings not inconsistent herewith.

*Reversed* and *remanded.*