(C. D. 1618)

ARCHER-DANIELS-MIDLAND COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 26, 1954)

*Milbank, Tweed, Hope & Hadley* (*John J. Keane, Jr.*, of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Dorothy C. Bennett*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This case involves an importation of mixed sperm oil and whale oil entered at the subport of Newark, N. J. The collector of customs assessed duty thereon at 25 per centum ad valorem under the provision in paragraph 57 of the Tariff Act of 1930, for "Combinations and mixtures of animal, vegetable, or mineral oils * * * not specially provided for." Plaintiff's original claim was as follows:

We protest this additional duty on these 75 drums of Mixed Sperm and Whale Oil which was removed from the "Anglo Norse" at the time of discharge on June 14, 1949.

We advised the Newark Office that the value of this material was 5 cents per pound, or in other words a value less than that of Sperm Oil.

It would appear from this additional duty notice that duty has been assessed at the value of Sperm Oil on the basis of 25% ad valorem, and not as a mixture of Sperm & Whale Oil.

An amendment to this protest was filed which claims that the merchandise should have been classified under section 508 of the Tariff Act of 1930, as commingled goods, subject to the highest rate of duty applicable to any part thereof, and, specifically, at 3 cents per gallon as whale oil under paragraph 52 of the same act, as modified by the General Agreement on Tariffs and Trade (T. D. 51802).

At the trial, Government counsel moved to dismiss the original protest on the ground that it raises a question of value only and is untimely as an appeal for reappraisement under section 501, as amended, of said tariff act and, further, that the motion to amend is, in fact, an original protest and, as such, is untimely under section 514

of said tariff act. The motion to dismiss was denied, the court being of the opinion that the original protest was broad enough to constitute a claim against the classification. The amendment was, therefore, granted.

The respective portions of the statutes involved are in the following language:

PAR. 57. Combinations and mixtures of animal, vegetable, or mineral oils or of any of them (except combinations or mixtures containing essential or distilled oils), with or without other substances, and not specially provided for, 25 per centum ad valorem, but not less than the rate applicable to the component material subject to the highest rate of duty: *Provided,* That no article containing alcohol shall be classified for duty under this paragraph.

SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

PAR. 52 [as originally enacted]. Oils, animal and fish: Sod, herring, and menhaden, 5 cents per gallon; whale and seal, 6 cents per gallon; sperm, crude, 10 cents per gallon; sperm, refined or otherwise processed, 14 cents per gallon; spermaceti wax, 6 cents per pound; wool grease * * *; all other animal and fish oils, fats, and greases, not specially provided for, 20 per centum ad valorem.

PAR. 52 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802]. Oils, animal and fish: * * *; whale and seal, 3 cents per gallon; sperm, crude, 1¼ cents per gallon; sperm, refined or otherwise processed, 3½ cents per gallon; * * * wool grease * * *; animal and fish oils, fats, and greases, not specially provided for; shark oil * * *; inedible animal oils, fats, and greases (except marine-animal oils, and neatsfoot oil and animal oils known as neatsfoot stock), 10 per centum ad valorem.

Plaintiff, in the brief filed, claims that the collector should have invoked the provisions of section 508, *supra,* and assessed duty at the rate applicable to the whale oil under paragraph 52 of the tariff act, that being the merchandise subject to the highest rate of duty applicable to any part of the commodity.

It is claimed on behalf of the Government that section 508, *supra,* is not applicable for the reason that at the time of importation the merchandise in suit did not consist of "commingled" classes of merchandise retaining their identity as such, but was, in fact, a "combination or mixture" of animal oils, permanently blended together to form a new commodity, with characteristics different from either sperm oil or whale oil *per se.* Further, that the specific provision for such combinations or mixtures in paragraph 57 precludes resort to any general provisions of the act. Moreover, Government counsel points out that plaintiff did not bring itself within the mandatory

provisions of said section 508, by segregating the whale oil from the sperm oil within 10 days after entry. In support of the collector's classification, the Government contends that merchandise must be classified according to its condition at the time of importation and that a specific provision must prevail over general provisions in the same act.

The evidence consists of the official papers transmitted to the court by the collector, the testimony of plaintiff's import and export manager, and a commercial surveyor's report (collective exhibit 2).

From the evidence, it appears that the importer made no application to segregate the sperm oil from the whale oil within the statutory time after entry, and plaintiff's witness stated that he did not believe it would be possible to physically separate the two oils in such a mixture. On cross-examination, he testified:

X Q. Would you say that the whale oil and the sperm oil were in combined form at the time of importation?

\* \* \* \* \* \* \*

A. That's the way it was tendered to us, as mixed oil.
X Q. Combined?—A. That's right.

It was also the testimony of the witness that to his knowledge the importation did not contain any essential oils or distilled oils, nor did it contain alcohol in its condition as imported.

The record herein does not disclose in what manner the two kinds of oil became mixed. The plaintiff imports crude sperm oil. Sperm oil had been purchased in this case, and all the remaining tanks of the importing vessel contained sperm oil. A chemical analysis of the contents of the 75 drums containing the mixture showed that the mixed oil was the result of the introduction into the sperm oil of a quantity of whale oil. The testimony shows that sperm oil and whale oil are products of separate distinct species of whales; that the two oils have different properties and different commercial uses. It was conceded by plaintiff's witness that, as imported, the sperm oil and whale oil were permanently blended together and were incapable of being separated. From the report of the surveyor (collective exhibit 2), as explained by plaintiff's witness, it is clear that in such combined form the importation, as an entirety, was a new commodity differing from either of its constituents.

The case of United States v. Carey & Skinner, 13 Ct. Cust. Appls. 24, T. D. 40863, presented circumstances somewhat similar to the situation here involved. In the cited case, an importation, consisting of a mixture of a coal-tar product and calcium phosphate, was before the court. It was held that there was no authority in law for taking duty as if the imported commodity consisted solely of its coal-tar ingredient. The court concluded that since the two constituents when imported were permanently blended and never thereafter

separated, the commodity was dutiable as a unit, in the condition as imported. So, here, the animal oil was, at the time of importation, permanently blended together and consisted of a "combination or mixture" of animal oils consisting of whale oil and sperm oil.

Plaintiff argues in the brief filed that in view of the language used by the Court of Customs and Patent Appeals in the case of *United States v. E. E. Holler*, 28 C. C. P. A. (Customs) 124, C. A. D. 133, it is the duty of the collector in assessing duty upon importations of a mingled nature to follow the procedure outlined in section 508, *supra*, because it has general application and takes precedence over the provision of a paragraph the application of which is specific. We quote the language of the court as follows:

It is a reasonable assumption that Congress in enacting section 507 of the Tariff Act of 1922, predecessor of section 508 of the Tariff Act of 1930, *supra*, had in mind the decisions of the courts theretofore rendered upon the subject matter and desired to lay down a definite statutory rule to govern the procedure in cases of commingled goods. The principle of the dicisions was embodied in the statute, and the section containing it is a general section which, in our opinion, governs all paragraphs of the act wherever applicable.

The interpretation given the language of the court is contrary to our understanding thereof. It is noted that the statement that the statute (section 508) "governs all paragraphs of the act" is limited to those paragraphs which are applicable. The commodities involved in the *Holler* case consisted of fish which were the product of American fisheries and, as such, free of duty, and fish which, because of the circumstances surrounding their catch, were found by the court not to be the product of American fisheries, and which were, therefore, subject to different duty treatment. The dutiable paragraph involved (717 of the Tariff Act of 1930) contained no provision for mixtures of various kinds of the imported commodity, as does the provision here involved. The limitation set by the court denotes, in our view, a recognition of the fact that there might be situations in which the ruling would have no application. Such a situation is presented in the case before us. The specific provision for combinations and mixtures of oils contained in paragraph 57 renders said section inapplicable.

We interpret the terms of paragraph 57, *supra*, to mean that the combinations and mixtures therein described are assessable at the rate of 25 per centum ad valorem, provided that rate is not less than the rate applicable to the component material in said combination or mixture which is subject to the highest rate of duty. Whale oil in the mixture before us is subject to a higher rate of duty than sperm oil (paragraph 52, *supra*). An assessment made under the terms of section 508, *supra*, at the rate applicable to whale oil, would have resulted in a levying of duty at a rate less than 25 per centum ad valorem. This is disclosed by a perusal of the invoice and entry.

The red-ink notations indicate that the customs officials found the mixture here involved to consist of 13.47 long tons, which, at the entered value of $370 per ton (there having been no proper appeal for reappraisement), would amount to $4,983.90, or, in round figures, as found by the liquidator, $4,984. Duty was assessed upon this amount at 25 per centum ad valorem, resulting in a duty of $1,246. The gauger's return shows the mixture to consist of 4,110.40 gallons, which, at the rate applicable to whale oil, as contended for by plaintiff, would result in a duty of $123.31. It is, therefore, plain that if resort were had to section 508, *supra*, the 25 per centum rate in said paragraph 57 would be rendered null and void. It is the opinion of the court that this was not within the contemplation of Congress in adopting this legislation.

As further indication that Congress was cognizant of and wished to guard against the invasion by said section 508 of provisions in the tariff act for mixtures of various kinds, it is noted that the provisions for mixtures of two or more fruits (paragraph 752) is followed by the proviso "That a mixture of two or more kinds of candied, crystallized, or glacé fruit shall bear the highest rate of duty applicable to any of the components." See also paragraph 761 covering edible nuts, wherein we find the language "that a mixture of two or more kinds of nuts shall bear the highest rate of duty applicable to any of the components." These provisions render inapplicable the terms of section 508, *supra*, to the paragraphs cited, insofar as said section permits assessment at appropriate rates upon each part or class of commingled merchandise, provided such part or class is segregated under the terms of the section.

For the foregoing reasons, it is plain that plaintiff's position cannot be sustained. Judgment will, therefore, be rendered for the defendant.