See also e.g., *Prescolite Mfgr. Corp., et al.* v. *United States*, 63 Cust. Ct. 228, C.D. 3900 (1969).

Twice before, the importers have had to litigate the dutiable status of off-grade Perlon filament yarn. They were successful in *McFadden* as they later were in *Wedemann* despite five additional witnesses produced by the government. And, as we have seen, beyond a bare denial there has been no effort by the government through affidavit, deposition or otherwise to contradict the sworn testimony by plaintiff's witness that the goods here involved are the same as those in the previous litigation. In this context, bearing repetition here is what our appellate court said in *Manca, Inc.* v. *United States*, 47 CCPA 103, 105, C.A.D. 738 (1960):

> * * * On principles of *stare decisis* is it controlling * * * unless the * * * [government] can show that the decision was clearly erroneous or that the imported merchandise here involved is not the same in kind. In our judgment it has failed to do either.

Plaintiff's motion for summary judgment is granted.

(C.D. 4338)

T. D. Downing Co. et al. v. United States

United States Customs Court, Second Division

(Decided March 8, 1972)

*Walter E. Doherty, Jr.*, for the plaintiffs.

*L. Patrick Gray, III*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before RAO and FORD, Judges; NEWMAN, Judge, not participating

FORD, Judge: The cases listed in schedule "A," annexed hereto and made a part hereof, present the question of the proper classification of certain controlled strip oilers, coil stock straighteners, and automatic feeders all of which are used with punch presses. They were classified as parts of machine tools under item 674.53, Tariff Schedules of the United States, and assessed with duty at, depending upon the date of entry, 14 per centum ad valorem, 12.5 per centum ad valorem or 11 per centum ad valorem.

Plaintiffs claim the proper classification to be under item 674.55, Tariff Schedules of the United States, which provides for accessories for machine tools at the rate of 10 per centum ad valorem, 9 per centum ad valorem or 8 per centum ad valorem, depending upon the date of entry.

This case is a retrial of *T. D. Downing Company* v. *United States*, 63 Cust. Ct. 57, C.D. 3873 (1969), the record and exhibits of which have been incorporated herein.

The provisions of the respective TSUS enumerations and the relevant general interpretative rule are as follows:

Schedule 6, part 4, TSUS.

SUBPART F.—MACHINES FOR WORKING METAL, STONE, AND OTHER MATERIALS

\*　　\*　　\*　　\*　　\*　　\*　　\*

Work and tool holders and other parts of, and accessories used principally with, machine tools; tool holders for the mechanical hand tools provided for in items 651.27, 674.70, and 683.20:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Other:
　　Parts:

\*　　\*　　\*　　\*　　\*　　\*　　\*

　　　Other:

\*　　\*　　\*　　\*　　\*　　\*　　\*

| 674.53 | Other parts_____ | 14% ad val. |
| | | 12.5% ad val. |
| | | 11% ad val. |
| | Accessories: | |
| 674.55 | Machines _____ | 10% ad val. |
| | | 9% ad val. |
| | | 8% ad val. |

10. General Interpretative Rules. For the purposes of these schedules—

\* \* \* \* \* \* \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

In addition to the incorporated record, plaintiffs offered the additional testimony of Mr. Howard L. Bacon, and one exhibit was received in evidence as well as the official papers.

The total record as presently made establishes the functioning of the three items involved. The stock straighteners are used to straighten the coiled stock before it goes to the feeder. They are usually fastened by bolts to a stand close to the punch press or to the bed plate of the press. The straighteners are used only on annealed material and then only if automatic feeding is utilized. If the stock is tempered, the straighteners are not required since the metal is usually straight. The straighteners release the energy of the coiled material by passing through five rollers the force of which is controlled by thumb screws.

The feeder is used only when coiled material is to be utilized. When sheet material or coil stock which contains heavy burrs is used, the automatic feeder is not utilized since the feeder cannot grip it and therefore it must be removed. The purpose of the feeder is to advance the coiled material to the punch at the speed desired. This is accomplished through rollers which are the subject of adjustment by means of a bell crank.

The automatic oiler is designed to apply a lubricant to the top and bottom of the material which is done by impregnating felt rollers. The flow of the lubricant is controlled by needle valves.

When automatic feed operation is not being utilized, the straighteners and oilers are removed as standard procedure by removal of usually two bolts. All of these items are used with punch presses to increase their efficiency. The particular brand of press or the size, 10 ton, 20 ton, etc., does not matter. These items may be used with any punch press when automatic feed is desired. The items are relatively new, the automatic feeder having been on the market approximately 17 years at the time of the original trial, the straighteners about 15 years and oilers about 5 years.

The decision in the incorporated case, C.D. 3873, *supra*, held the three articles, the straightener, feeder and oiler serve a useful function—they eliminate manual labor, increase the rate of production, safety and convenience of a punch press utilizing coil stock. This the court reasoned falls within the test laid down by the decision in *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849 (1964).

The latest decision involving the competition of items 674.53 and 674.55, Tariff Schedules of the United States, is *United States* v. *C. F. Liebert, Customhouse Broker*, 59 CCPA 43, C.A.D. 1035 (1971). The court therein had before it for consideration the question of whether so-called back-up rolls used with veneer lathes were parts or accessories. In its decision, the court made the following statement:

> The issue is whether the imported back-up roll assemblies are parts of a veneer lathe (a machine tool), or accessories which may be used therewith.

> Various decisions involving the question whether articles were classifiable as parts of some comprehensive article, or as some specified article (not as an accessory), were cited and considered below. However, the Customs Court did not find those cases to demonstrate that the present articles are parts of veneer lathes, nor do we.

> As to whether the back-up roll assemblies are accessories, the principal opinion of the Customs Court advances the following reasoning:

>> In the instant case, the back-up roll is not needed for the operation of a veneer lathe in the production of veneer nor does its installation prevent the lathe from carrying on without it, even on small logs. It merely holds the small log in position so that the lathe may cut it more effectively. That is the role of an accessory—to add to the effectiveness of something else. (Webster's Third New International Dictionary.)

>> Since the provisions of the tariff schedules, *supra*, provide separately for parts of, and accessories used with, machine tools, it is clear that a distinction was intended. The Tariff Classification Study mentions as examples of "accessories" jigs, fixtures and other subsidiary devices or accessories. Webster's Third New International Dictionary defines "jig" as "a device used to maintain mechanically the correct positional relationship between a piece of work and the tool working on it." Another authority states that jigs and fixtures serve the purpose of holding and properly locating a piece of work while it is being machined. Engineering Encyclopedia, Franklin D. Jones.

>> The back up role in the instant case performs a similar function. It is an auxiliary device which holds the piece of work (the log) in position while the tool (the veneer lathe) works upon it.

We find no error in that reasoning and thus are convinced, as was the majority of the Customs Court, that the back-up roll assemblies are accessories used with veneer lathes and are not parts of such lathes.

The only other case coming to our attention where TSUS items 674.53 and 674.55 were in competition is *T. D. Downing Co.* v. *United States*, 63 Cust. Ct. 57, C.D. 3873 (1969). While the court there ruled that certain importations, different from those here, were parts rather than accessories, we find nothing in its reasoning that persuades us that the court erred in the present case.

Following the rationale of this decision, it would seem that the straightener, feeder and oiler involved herein are devices which are not essential in themselves but add to the effectiveness of the punch press. Accordingly and based upon the decision in the *Liebert* case, *supra*, we hold such articles to be accessories. It is axiomatic that the provision for accessories is more specific than the general provision for parts and therefore prevails.

The next question presented is whether these items are in themselves machines since if they are a different rate of duty is applicable from those accessories which are not machines. The record and an examination of the exhibits lead us to the conclusion that the imported articles fall within the judicial determination of a machine. *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820 (1963) ; *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786 (1961) ; *United States* v. *Idl Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756 (1960).

The claim of plaintiffs under item 674.55, *supra*, is therefore sustained. Judgment will be entered accordingly.