(C.D. 4538)

OLYMPUS CORP. OF AMERICA *v.* UNITED STATES

Court No. 71–11–01649

(Decided May 6, 1974)

*Rode & Qualey* (*Ellsworth F. Qualey* and *William E. Melahn* of counsel) for the plaintiff.

*Carla A. Hills,* Assistant Attorney General (*Joseph I. Liebman,* trial attorney), for the defendant.

LANDIS, Judge: This action [1] involves the classification of an assembled article imported from Japan and entered at New York on November 13, 1969. Customs officials classified the assembled article as a compound optical microscope (defendant's theory is that it is a microscope, unfinished) [2] under TSUS (Tariff Schedules of the United States) item 708.73, dutiable at the modified rate of 36 per centum ad valorem, pursuant to trade agreement. [3]

Plaintiff alleges that the assembled article is properly classifiable under the tariff provision classifying frames, mountings, and parts thereof, for compound optical microscopes, dutiable at 24 per centum ad valorem under TSUS item 708.80. [4]

The competing tariff provisions, in pertinent context, are provided for in TSUS as follows:

SCHEDULE 7. — SPECIFIED PRODUCTS; MISCELLANEOUS AND NONENUMERATED PRODUCTS

Part 2. — Optical Goods; Scientific and Professional Instruments; Watches, Clocks, and Timing Devices; Photographic Goods; Motion Pictures; Recordings and Recording Media

\* \* \* \* \* \* \*

Subpart A. — Optical Elements, Spectacles, Microscopes, and Telescopes; Optical Goods Not Elsewhere Provided For

\* \* \* \* \* \* \*

Compound optical microscopes; electron, proton, and similar microscopes and diffraction apparatus; all the foregoing whether or not provided with means for photographing or projecting the image; frames and mountings for the foregoing articles, and parts of such frames and mountings:
 Compound optical microscopes:
 Not provided with means for photographing or projecting the image:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 708.73 | Valued over $50 each_____ | 36% ad val. |

\* \* \* \* \* \* \*

 Frames and mounting, and parts thereof:

| | | |
|---|---|---|
| 708.80 | For compound optical microscopes _____ | 24% ad val. |

There are, in TSUS, statutory rules for interpreting the provisions describing the classes of imported merchandise for duty purposes.

---

[1] The action covers two administrative protests identified as numbers 1001–1–007862 and 1001–1–003759, reviewed and denied by customs officials in proceedings under the Customs Administrative Act of 1970 (84 Stat. 282). Plaintiff, in its complaint, has abandoned the action as to protest 1001–1–007862 covering entries 430093 and 587196.

[2] TSUS General Interpretative Rule 10(h).

[3] Presidential Proclamation 3822, 82 Stat. 1455, 1584.

[4] Id.

Relevant to this dispute, defendant relies on TSUS General Interpretative Rule 10(h), which provides as follows:

> (h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished.

All merchandise imported into the United States is classifiable in the condition that it is imported. *United States* v. *P. John Hanrahan, Inc., et al.*, 45 CCPA 120, C.A.D. 684 (1958). The article in this case, in the condition imported, is assembled. The record substantially establishes that the assembled article is complete or finished in the sense that it requires no further processing, manufacturing or labor to advance it for the purpose intended. The assembled article is, however, incomplete or, if you will, unfinished, in the sense that it lacks optical and other vital components necessary for it to function as a compound optical microscope. No one questions that in the assembled condition imported, the article is advanced to the point that it is dedicated to be a compound optical microscope.

The issue in this case is, quite simply, whether the assembled article, in the condition imported, is classifiable under TSUS item 708.80 provision for frames and mountings, and parts thereof, for compound optical microscopes, as plaintiff claims, rather than under TSUS item 708.73 as a compound optical microscope, unfinished. If the assembled article is in reality a frame and mountings for a compound optical microscope, specially provided for under TSUS item 708.80, there is, in my opinion, little merit to the customs classification as a compound optical microscope, unfinished, under TSUS item 708.73.

Defendant, in its argument that the assembled article is not classifiable as plaintiff claims, contends that, in the condition imported, the article assembled is more than a frame and mountings, and parts thereof, for a compound optical microscope. With respect to that contention, it is important to note that defendant *does not* contend that merely because the article imported is assembled, it may not be classified under the descriptively specific provision for frames and mountings, and parts thereof, for compound optical microscopes.[5]

---

[5] If an unassembled article cannot be classified as the article it will be when assembled, unfinished, if it is imported *without vital components necessary to complete it, United States* v. *Baldt Anchor, Chain & Forge Division of the Boston Metals Co. et al.*, 59 CCPA 122, C.A.D. 1051, 459 F. 2d 1403 (1972), it follows that an imported assembled article, lacking the vital components that characterize or comprise a compound optical microscope, is not classifiable as a compound optical microscope, unfinished, in competition with a tariff provision classifying the individual entities of which the assembled article is comprised. This conceptual result is supported by the judicial principle that:

> * * * If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combina-

The record herein consists of the testimony of three witnesses for plaintiff, one witness for defendant, and various exhibits. Exhibit 1 is representative of the assembled article in the condition imported.

The testimony, visual examination, and other evidence (exhibits A and C) establish that, in the assembled condition imported, exhibit 1 consists of a base, an arm, a mounting for interchangeable monocular, binocular or triocular heads; a quintuple revolving nosepiece for mounting interchangeable objectives (eyepieces); a mounting for a stage and substage condenser; coarse and fine adjustment knobs; a flip-switch that moves to a position labeled "lock"; a "perfect" illuminator enclosed in the base; a lens system with two or four lenses mounted on the base for projecting the illumination to the condenser, and a three-position flip-switch for the illuminator. It is also established that, in the condition imported the assembled article lacks necessary components for it to function as a compound optical microscope, namely, an ocular head, eyepieces, objectives, condenser, and specimen stage (exhibits 2A, B, C, D and E).[6]

Material to its argument that the assembled article is more than a frame and mountings and parts thereof for a compound optical microscope, defendant relies on the testimony, next summarized, pertaining to the assembled article and the fact that the assembled article includes a system for illuminating the object and coarse and fine adjustment knobs.

Plaintiff's witness, Mr. Braginsky,[7] testified that a frame for a microscope is that part which holds the optics and specimen in proper alignment. A mounting, he stated, is a mechanical device attached to the frame, on which you mount the optics or another part of the microscope. The built-in illuminating source on the imported assembled article, in the opinion of Mr. Braginsky, is not a frame or mounting. The lens mounted on the base of the assembled article is part of the built-in illuminating system. Mr. Braginsky testified that an illuminating source is an essential element of a compound optical

tion as though they had been imported separately. * * * If there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent. [*Donads Ltd., Inc* v. *United States*, 32 Cust. Ct. 310, 315, C.D. 1619 (1954).]

The classification "unfinished" (General Interpretative Rule 10(h)) applies unless the context of the tariff classification for an article requires otherwise. The context of the provision for compound optical microscopes, and frames, mountings and parts thereof, for compound optical microscopes, in my view, requires that the latter be so classified whether assembled or not assembled.

[6] Exhibit 3 illustratively represents the assembled article with an ocular head, eyepiece, objectives, condenser, and specimen stage.

[7] Mr. Sidney Braginsky, employed by plaintiff as manager of its precision instrument division.

microscope and, as seen in the assembled article (exhibit 1), the built-in illuminator is part of the frame.

Dr. Pollister,[8] witness for plaintiff, testified that the assembled article (exhibit 1) is a frame; that the adjustment knobs and other attachments, including the illuminating system, are part of the frame; that the lens mounted on the base of the assembled article is part of the illuminating system; that an illuminating system is essential to a compound optical microscope, and that the illuminating system has a function unto itself.

Defendant's witness, Mr. Forgosh,[9] testified that, in his opinion, the assembled article consists of more than a frame and mountings and parts thereof, for a compound optical microscope, because of the additional independent functions and moving parts, namely, the illuminator, coarse and fine adjustment knobs, and rack and pinion for the substage.

Whatever else may be said for the above testimony, it is merely advisory since the court is not bound by testimony with respect to the tariff meaning of the term frames and mountings, and parts thereof, for compound optical microscopes. *Tropical Craft Corp* v. *United States*, 45 CCPA 59, C.A.D. 673 (1958) ; *United States* v. *Mercantil Distribuidora, S.A., et al.*, 43 CCPA 111, C.A.D. 617 (1956). For as defendant acknowledges "[i]n order to determine if an article is more than that provided for in a particular tariff provision, it is necessary to ascertain the common meaning of the tariff provision and compare it with the * * * [article] in issue." *E. Green & Son (New York), Inc.* v. *United States*, 59 CCPA 31, 34, C.A.D. 1032, 450 F. 2d 1396 (1971). And as quite often happens, it is on a case by case basis that the court construes and sets the limits of statutory language by a process of inclusion and exclusion and, by this process, bound by no evidence, determines the common meaning as it is the court's function to do. *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958).

As stated in the legislative history known as the Tariff Classification Study (schedule 7, page 143), "[t]he * * * provisions for frames and mountings and parts thereof [item 708.80] follow present practices." An existing practice must reflect the case by case process of inclusion and exclusion, by which the court has set the limits of the statutory language frames and mountings and parts thereof, as com-

---

[8] Arthur W. Pollister, a retired professor of zoology, and consultant to plaintiff, testified that his professional work required extensive use of microscopes and he was familiar with microscopes. Dr. Pollister acknowledged, however, that he was not "familiar with this particular microscope [exhibit 1]."

[9] Harold Forgosh, employed as district sales manager by Bausch and Lomb, Inc., a manufacturer of optical and electronic components and instruments.

monly understood.[10] The following court decisions cited by plaintiff in its brief are relevant precedents as to the common meaning of the terms "frames and mountings, and parts thereof" in connection with optical instruments, including microscopes.

*United States* v. *American Express Co.*, 7 Ct. Cust. Appls. 169, T.D. 36490 (1916), involved classification of a metal structure, designed to serve as a support for the motive machinery, film reels, lamp house, and projection lenses of a moving-picture machine. Customs classified the metal structure as the frame of an optical instrument dutiable under paragraph 93 of the Tariff Act of 1913 which provided for frames and mountings for optical instruments. Judgment below entered sustaining importer's claim that the metal structure was properly classifiable as the frame of a projection lens under paragraph 94, which provided for frames and mountings for projection lenses. On appeal, the United States, arguing that the metal structure was more than a frame for a projection lens because a projection lens mounted on a frame with the appliances necessary to make it ready for use ceases to be a projection lens and becomes a moving-picture machine which is an optical instrument, apparently also opted to restricting the meaning of the terms "frames" and "mountings" to those parts (i.e. metal tube) into which the lens is fitted.

Replying to the argument, the court of appeals pointed out that Congress, having provided in paragraph 94 for frames and mountings for projection lenses, must have contemplated such a thing as a projection lens mounted and ready for use. Countering a contention which would restrict the meaning of the terms "frames" and "mountings," the court of appeals stated as follows:

> * * * If * * * [a] restricted meaning, however, is given to the terms "frames" and "mountings" when applied to projection lenses, the same restricted meaning must be given to them when applied to the surveying instruments and telescopes provided for in the same paragraph, and that we do not think can be done, inasmuch as surveying instruments and telescopes are certainly something more than mere lenses. (See "Telescope," Standard Dictionary and Encyclopedia Britannica.) If frames and mountings for surveying instruments and telescopes mean the supporting structure and certain adjuncts of those instruments required for their use, then they must mean the supporting structure and certain adjuncts of a projection lens required for its use.
>
> In our opinion, the evidence in this case very clearly establishes that the metal support, the reels, the electric lamp, the mirror, the condenser, and the motive machinery are all instrumentalities

---

[10] See, TSUS General Headnotes and Rules of Interpretation, General Interpretative Rule 10 statement that for purposes of TSUS, the provisions describing the classes of imported articles are subject to the rules therein, and to such other rules of statutory interpretation as are not inconsistent, established by judicial decision.

designed to aid and assist the projection lens in producing on a screen an enlargement of the small pictures on the film, and that without such appliances the projection lens would be wholly ineffective for that purpose. Unquestionably the completed article would be a moving-picture machine and possibly it might be regarded as an optical instrument. Nevertheless, it would be at the same time a projection lens supported by the frame and fitted with the adjuncts which make it available for use. From that it follows that even if the frame here involved be considered as the frame for an optical instrument, it is none the less the frame for a projection lens, and as frames for projection lenses are provided for in paragraph 94, that provision must be preferred to the less specific and more comprehensive provision in paragraph 93 covering frames for optical instruments. [*United States* v. *American Express Co.*, 7 Ct. Cust. Appls. 169, at pages 171–172.]

In *United States* v. *International Forwarding Co.*, 9 Ct. Cust. Appls. 156, T.D. 37995 (1919), appeal was taken from decision involving an importation of tubes for a polariscope. Customs had classified the tubes as mountings for an optical instrument (paragraph 93, Tariff Act of 1913). Judgment had entered holding the tubes properly classifiable as manufactures in chief value of metal (paragraph 167, 1913 Tariff Act). As stated in the court of appeals opinion decision, the polariscope tubes were specially designed glass tubes, in varying lengths, for holding liquids to be examined in polariscopes in polarized light. Attached to each end of the tubes were metal ends with screwed brass attachments containing glass disks. Acknowledging that the statement quoted above from *United States* v. *American Express Co.*, *supra*, constituted *obiter dicta*, the court of appeals stated that it was constrained to reverse the decision below and follow the decision in *American Express* because the *obiter* statement accorded with the lexicographic meaning of the term "mountings" which, *"when used in connection with optical instruments such as the microscope and polariscope is used in the sense of accessories, adjuncts, or parts thereof,* which plainly would include the polariscope tubes * * *." [9 Ct. Cust. Appls., at page 159. Emphasis added.] [11]

In *Lietz Co.* v. *United States*, 11 Ct. Cust. Appls. 426, T.D. 39434 (1923), the court of appeals reversed a decision sustaining the customs classification of spirit levels (closed small blown-glass tubes filled with a clear liquid containing a floating bubble of air, used with surveying transits) as articles of every description composed wholly or in chief value of blown glass. The court of appeals held the spirit levels properly classifiable as mountings for surveying instruments within the

---

[11] See also, *United States* v. *Sheldon & Co.*, 9 Ct. Cust. Appls. 153, T.D. 37994 (1919), reversing decision below and holding mother-of-pearl staves and name rings, imported and suitable for no other use than as mountings or embellishments for opera glasses, properly classifiable as mountings for opera glasses.

common meaning of the term "mountings," because, as stated by the court "[w]e think that the term 'mountings' includes such nonoptical accessories as are mounted upon the instruments, and is not limited to the parts whereby they are supported thereon," *United States* v. *International Forwarding Co.* and *United States* v. *American Express Co.*, *supra.*

The above decisions were reviewed and approved in *Thomas Co.* v. *United States*, 12 Ct. Cust. Appls. 425, T.D. 40591 (1924), wherein the court noted that:

> In each of the cases referred to the merchandise involved consisted of accessories, adjuncts, or parts of the instruments described in the paragraph under consideration, and each article was designed to be attached to the instrument of which it was an accessory, adjunct, or part, and was further designed as such an essential, or at least as such an important element, as, when attached, it would aid the instrument to perform its proper function.

> It is evident from a careful reading of paragraph 228, supra, that the word "mountings" as used therein has the same meaning as the word "mountings" as used in paragraph 94 of the tariff act of 1913 in so far as the same may pertain to microscopes. [Page 428.]

Citing definitions of the words "accessory" and "adjunct," the court of appeals held that microscopic slides and cover glasses were not mountings for microscopes as classified by customs under paragraph 228 of the 1922 Tariff Act, because in the tariff sense of "mountings" as accessories or adjuncts:

> The glass slides are not designed to be joined, connected, or attached to a microscope and are therefore not adjuncts of it. Nor are they designed to be connected with a microscope so as to contribute to or aid it in the performance of the essential and proper function of such instrument. The glass slide is not in any sense an addition to the microscope, nor does it accompany it, within the definition of the word "accessory." Certainly it is not a part of the microscope. It is designed to be used in connection with a microscope, but not to aid or contribute to the proper office or function of the instrument as such. It may be classed as a mount or mounting in the sense that a specimen for microscopic analysis is mounted upon it, but it is not, merely on that account, a mounting for a microscope. * * * [12] [Page 429.]

Where the congressional intent as expressed in competing classification provisions so requires, the term "frames and mountings," as

---

[12] See also, *American Holding Corp. et al.* v. *United States*, 18 CCPA 274, T.D. 44449 (1930), citing and discussing the same decisions in support of classifying essential units or parts of a motion-picture projection mechanism as mountings or frames for projection lenses.

applied to photographic lenses (paragraph 228, Tariff Act of 1922), has been given a restricted meaning, limited to the frames in which, and to the parts on which, such lenses are intended to be mounted or supported, *United States* v. *Bell & Howell Co.*, 19 CCPA 151, 155, T.D. 45263 (1931). In *Bell & Howell*, after again reviewing the cases discussed herein and definitions of the word "mounting," the court of appeals concluded that Congress intended such restricted meaning and stated as follows (pages 155–156) :

> It is evident from these definitions that the term "mountings" may mean, depending on the intention of the Congress, that which serves as a mount or a support for an article; or it may include accessories, adjuncts, and equipment by means of which an article is prepared or equipped for use, or set off to an advantage.
>
> In the cases hereinbefore cited this court adopted the enlarged meaning and applied it to the articles and instruments considered in those cases. However, this meaning has never been applied, so far as we are aware, to the provisions for "mountings" for "photographic lenses." Furthermore, we are of opinion that it was not the intention of the Congress to use the word "mountings" in connection with "photographic lenses" in its broad and comprehensive meaning. On the contrary, we think the Congress intended that, as applied to "photographic lenses," the phrase "frames and mountings" should be given a restricted meaning and should be limited to the frames in which, and to the parts on which, such lenses are intended to be mounted or supported. Any other construction would result either in so greatly limiting the operation of the provisions for photographic cameras and parts thereof, in paragraph 1453, as to defeat the evident purpose of the Congress, or in placing such a doubtful and indefinite limitation on the provisions for "frames and mountings" for photographic lenses as to make it difficult, if not impossible, for importers and customs officials, and the courts for that matter, to comprehend the scope of them.
>
> The clear and uncontroverted evidence in this case is that the articles in question are "Kodacolor filter adapters for 1″ F/1.8 formula IVA lenses," designed and used as equipment and accessories for, or adjuncts of, photographic lenses, and are, when in use, so connected that they directly contribute to, and aid, photographic lenses in the performance of their proper functions. However, they do not serve as mounts, supports, nor as frames for the lenses, but are merely connected to them. They are not, therefore, within the restricted meaning intended by the Congress to be applied to the phrase "frames and mountings" when used in connection with "photographic lenses."

It is obvious from the cases discussed herein that different factors such as function, uses, applicable tariff provisions and common sense were taken into consideration in determining whether particular parts were frames and mountings in the common meaning of the term as

applied to particular instruments. The situation must be viewed as a whole. *Marshall Field & Co.* v. *United States, supra.* The term "frames and mountings," as applied to microscopes, has, on a case by case basis, been broadly and comprehensively construed to include accessories, adjuncts, and equipment by means of which a microscope is prepared or equipped for use.

The assembled article (exhibit 1) bears potent witness of what it is. Defendant, in substance, contends that because the assembled article includes coarse and fine adjustment knobs and a built-in illuminating system, it is more than a frame and mountings for a compound optical microscope. Coarse and fine adjustment knobs attached to the frame of a microscope are "adjusting accessories" within the scope of that authority which "exerted the greatest influence on the arrangement of the * * * [tariff] schedules," namely the Brussels Nomenclature.[13] (Tariff Classification Study, Submitting Report, page 8.)

The illuminating system "built in" and attached to the assembled article performs an independent function that is basically auxiliary to the function of a compound optical microscope, which *"usually* [has] a provision for illuminating the object"[14] (emphasis added). If a compound optical microscope usually, but not always, incorporates a provision for illuminating the object, then the illuminating system is an accessory that adds to the effectiveness of a compound optical microscope. CF., *Herbert G. Schwarz, dba Ski Imports* v. *United States,* 57 CCPA 19, C.A.D. 971, 417 F. 2d 1391 (1969) ; *T. D. Downing Co. et al.* v. *United States,* 68 Cust. Ct. 71, 75, C.D. 4338 (1972). The coarse and fine adjustment knobs and illuminating system attached to the assembled article in the explicit sense discussed in *Thomas Co.* v. *United States, supra,* are adjuncts and accessories, designed, joined, connected, and attached to a frame in a manner as to contribute and aid the performance of the instrument the assembled article as a whole represents, namely, a frame and mountings for a compound optical microscope.

Tariff statutes must be construed in a manner that accords with the legislative intent, *Sandoz Chemical Works, Inc.* v. *United States,* 43 CCPA 152, C.A.D. 623 (1956), and makes all parts of the statute effective. *United States* v. *Bell & Howell Co., supra.* Congress in providing for compound optical microscopes and frames and mountings for compound optical microscopes must have contemplated such a thing as frames and mountings and parts thereof, for compound optical microscopes. Where terms in a tariff statute have been judicially interpreted and a new statute is reenacted in substantially the

---

[13] See, Explanatory Notes to the Brussels Nomenclature (1955), Volume III, page 1035, heading 90.12.

[14] Tariff Classification Study, Schedule 7, items 708.71 through 708.73, page 143.

same terms (frames and mountings, and parts thereof, for compound optical microscopes in TSUS are substantially the same terms used in prior tariff acts), the terms will be given the same interpretation, unless a contrary legislative intent is clearly shown. *United States* v. *E. Dillingham, Inc.*, 41 CCPA 221, C.A.D. 555 (1954). Congress, as mentioned earlier, was advised that the provision for frames and mountings followed existing practices. The existing practices presumedly followed the judicial decisions broadly construing the terms to include adjuncts and accessories for microscopes. Defendant has cited nothing that points to a different legislative intent in TSUS.

The rule, relied on by defendant, that a tariff description (in this case compound optical microscopes) covers such article whether finished or unfinished is a rule of classification *unless the context requires otherwise*. The provision for "Frames and mountings, and parts thereof: For compound optical microscopes," upon authority of the judicial decisions holding that the term frames and mountings includes adjuncts, accessories, and equipment by means of which an article is prepared or equipped, in my opinion, requires otherwise. Cf. *United States* v. *Bald Anchor, supra*.[15]

For the reasons herein discussed, this action claiming classification under TSUS item 708.80 is sustained with respect to entry No. K-195494 covered by the summons in the action.

Entry Nos. 430093 and 587196 covered by the summons having been abandoned, the action is dismissed as to those entries.

Judgment will enter accordingly.