**AMOCO OIL CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 81–6–00760.**

United States Court of International Trade.

Jan. 31, 1984.

Douglas W. Johnson, Chicago, Ill., for plaintiff.

Mayer, Brown & Platt (Joan P. Fread, Washington, D.C., on brief; Jeffrey I. Gordon and Mark W. Ryan, Washington, D.C., of counsel), for amicus curiae.

Richard K. Willard, Acting Asst. Atty. Gen., Joseph I. Liebman, New York City, Atty. in Charge, Intern. Trade Field Office, Commercial Lit. Branch (Barbara M. Epstein, Wantagh, N.Y., on brief), for defendant.

FORD, Judge:

This action involves the classification of certain shipments of center-cut natural gas liquids (NGLs) imported from Canada at Port Huron, Michigan.

Plaintiff entered and sold to Consumers Power Company, a Michigan corporation, six shipments of center-cut NGLs which contained over 50% by weight of propane. The merchandise was classified by the United States Customs Service under item 430.00, Tariff Schedules of the United States (TSUS), and assessed with duty at the rate of 5% ad valorem.

Plaintiff contends the merchandise is properly classifiable under item 475.15, TSUS. Alternatively, plaintiff urges General Headnote 7, TSUS, is applicable and controlling. The parties, pursuant to Rule 56 of this Court, have cross-moved for summary judgment.

A motion under Rules 7 and 76 of this Court to appear and file a brief as *amicus curiae* by Dome Petroleum Corporation was granted.

The pertinent statutory provisions involved provide as follows:

475.15 Natural gas, methane, ethane, propane, butane, and mixtures thereof . . . . . . . . Free
Natural gas, methane and mixtures thereof (including liquified natural gas and synthetic or substitute natural gas) . . . . . . . . . . . . . . . . . . . . . . .

430.00 Mixtures of two or more organic compounds . . . . . . . . . . . . . . . . . . . . . . . 5% ad val., but not less than the highest rate applicable to any component compound

General Headnote 7:

*Commingling of Articles.* (a) Whenever articles subject to different rates of duty are so packed together or mingled that the quantity or value of each class of articles cannot be readily ascertained by customs officers (without physical segregation of the shipment or the contents of any entire package thereof), by one or more of the following means:

(i) sampling,

(ii) verification of packing lists or other documents filed at the time of entry, or

(iii) evidence showing performance of commercial settlement tests generally accepted in the trade and filed in such time and manner as may be prescribed by regulations of the Secretary of the Treasury,

the commingled articles shall be subject to the highest rate of duty applicable to any part thereof * * *

The record before the Court reflects that plaintiff operates several natural gas processing plants throughout the United States and Canada. Crude natural gas is a mixture which contains many hydrocarbon compounds. At the processing stage, some of the component gases are regularly separated to facilitate storage and transportation. The two principal ingredients in natural gas are methane and ethane, which together comprise approximately 95% of crude natural gas. After methane has been separated from the crude natural gas, the remaining mixture of compounds is known as NGLs. When ethane is removed from this mixture, the remaining components are known as center-cut NGLs. It is the center-cut NGLs around which this action is focused.

Center-cut NGLs streams in their natural state are not comprised of more than 50% of any one hydrocarbon compound. On the occasion of the shipments at issue, plaintiff had acquired a surplus of propane, one of the remaining components in the center-cut NGL stream. Propane is classified under item 475.15, TSUS, and admitted duty-free. Since propane cannot be shipped separately through the I.P.P.L.-Lakehead Pipeline, as it exceeds the maximum vapor pressure allowance, plaintiff injected additional propane into the center-cut NGL stream, raising the level of propane in the stream to over 50%.

Center-cut NGLs not containing over 50% by weight of any single hydrocarbon compound are normally subject to classification under item 475.70, TSUS, which provides as follows:

Mixtures of hydrocarbons not specially provided for, derived wholly from petroleum, shale oil, natural gas, or combinations thereof, which contain by weight not over 50% of any single hydrocarbon compound:

In other than liquid form ...... Free

As these shipments contained over 50% of a single hydrocarbon compound, propane, the Customs Service classified the merchandise under item 430.00, TSUS, and assessed duty at a rate of 5% ad valorem.

■ The classification of the merchandise by the Customs Service under item 430.00, TSUS, is presumed to be correct. 28 U.S.C. § 2639(a)(1) (1980). Accordingly, plaintiff has the dual burden of establishing, by a preponderance of the evidence, the classification of the Customs Service to be incorrect and that plaintiff's classification is correct. *Ameliotex, Inc. v. United States*, 77 Cust.Ct. 72, C.D. 4673, 426 F.Supp. 556 (1976), *aff'd.* 65 CCPA 22, C.A.D. 1200, 565 F.2d 674 (1977).

■ Plaintiff contends the center-cut NGLs are properly classified under item 475.15, TSUS, since all of the components of center-cut NGL streams, including the additional injected propane, are found in natural gas and listed under item 475.15, TSUS. While all the components of the center-cut NGL streams are found in natural gas, not all the components are listed under item 475.15. In the agreed statement of facts submitted by the parties, plaintiff conceded there were hydrocarbons in the imported merchandise which were not specifically enumerated in item 475.15, TSUS. If imported individually, neo pentane, iso pentane, n-pentane and neo hexane are subject to classification under item 429.54, TSUS, at 5% ad valorem. Thus item 475.15, TSUS, does not include all the components found in the shipments at issue. Additionally, it should be noted that plaintiff, in the agreed statement of facts,

acknowledged the merchandise involved "is not methane; is not ethane; is not propane; is not butane." This statement would further indicate that classification under item 475.15, TSUS, is precluded.

Plaintiff continues its argument in support of item 475.15, TSUS, classification by claiming that Schedule 4, Part 2, Headnote 1, TSUS, pertaining to the classification made by Customs, precludes its usage herein.

Headnote 1 provides as follows:

This part covers chemicals, except those provided for elsewhere in this schedule and those specifically provided for in any of the other schedules.

\* \* \* \* \* \*

In view of the foregoing, plaintiff asserts that its merchandise is provided for "elsewhere" in item 475.15, TSUS, and by General Headnote 7. Having determined that classification under item 475.15 is inappropriate, the applicability of General Headnote 7, though not a classification provision, must be considered.

■ Plaintiff maintains that where a mixture of two duty-free items is involved, General Headnote 7 provides that the merchandise be admitted duty-free, as the highest rate of duty applicable is zero. Plaintiff neglects, in this analysis, to include the additional components found in the NGL streams, (supra), which are classifiable under item 429.54, TSUS, at 5% ad valorem. Furthermore, a reading of General Headnote 7 establishes that its application is limited to two conditions: (1) that the articles involved be subject to different rates of duty; and (2) that the quantity or value of those articles cannot be ascertained. Neither of these conditions can be found here. Plaintiff argues that two items, the additional injected propane and the center-cut NGL, have the same rate of duty, zero, and thus should be admitted duty-free. Under those circumstances, General Headnote 7 would not be available, as both these items have the same rate of duty. Additionally, Exhibits A through F, submitted with the agreed statement of

facts, set forth by weight and volume the exact percentages of the components found in the shipments at issue. Where the quantity and value of the merchandise, as well as the rate of duty, have been determined, it is unnecessary to reach beyond the pertinent statutory provisions and apply General Headnote 7(a).

Schedule 4, Headnote 3(a), TSUS, defines the term "mixture" as:

substances consisting of two or more ingredients (i.e., elements or compounds), whether occurring as such in nature, or whether artificially produced (i.e., brought about by mechanical, physical or chemical means), which do not bear a fixed ratio to one another and which, however thoroughly commingled, retain their individual chemical properties and are not chemically united. *The fact that the ingredients of a product are incapable of separation or have been commingled in definite proportions does not in itself affect the classification of such product as a mixture.* [Emphasis supplied.]

Subsection (e) of General Headnote 7 states:

The provisions of this headnote shall apply only in cases where the schedules do not expressly provide a particular tariff treatment for commingled articles.

The above definition of "mixture" is supportive of the fact that the imported merchandise was correctly treated as a mixture rather than as commingled merchandise. Utilization of the term "commingled" in the definition is clearly indicative of the intent to classify such merchandise as a mixture, rather than to regard it as commingled merchandise under General Headnote 7.

The classification contested here, item 430.00, TSUS, is precisely the treatment defined by the Schedule 4, headnote 3(a), TSUS, definition and referred to in subsection (e) of General Headnote 7. This Court has previously held that where there are specific provisions for mixtures, the commingling rule is inapplicable. *Archer-Daniels-Midland Company v. United States,* 32 Cust.Ct. 305, C.D. 1618 (1954). That case involved a classification under paragraph 57 of the Tariff Act of 1930, dealing with "combinations and mixtures * * * not specially provided for." The Court therein denied treatment under the commingling provision, stating the specific provision for combinations and mixtures rendered that provision inapplicable.

Plaintiff urges, in view of the difficulty in transporting propane through the I.P.P.L.-Lakehead Pipeline and the expense of alternative means of transportation, the injection of the propane was for transportation purposes only. This position is not supported by case law which has evolved under this theory. While materials or components added solely for transportation purposes may be disregarded in classification, material deliberately added to change or enhance the product is not so protected. *United States v. Aetna Explosives Co.,* 256 U.S. 402, 41 S.Ct. 513, 65 L.Ed. 1013 (1921); *Northam Warren Corp. et al. v. United States,* 60 CCPA 117, C.A.D. 1092, 475 F.2d 647 (1973). In this instance the addition of the propane served to increase the volume, and thus the value, of the shipments and was not added solely to facilitate the transportation of the center-cut NGL stream.

It is well-settled that imported merchandise must be classified with reference to its condition as imported. *United States v. Citroen,* 223 U.S. 407, 32 S.Ct. 259, 56 L.Ed. 486 (1911); *Olympus Corp. of America v. United States,* 72 Cust.Ct. 176, C.D. 4538 (1974). The merchandise in this case was imported, and indeed sold, as center-cut natural gas liquids which contain more than 50% by weight of propane. This composition was within the parameters of the contract entered into by plaintiff to supply the merchandise to Consumers Power Company. Whether the merchandise was separated by chemical process at a later date is not relevant here. It is in the condition as imported that the shipments at issue are to be classified.

While plaintiff argues the shipments should be assessed duty at the rate assessed its component parts, these ship-

ments, individually, constitute a single tariff entity and, as such, are subject to the duty assessed on them as mixtures. Such interpretation finds support in *E.C. Liniero v. United States*, 37 CCPA 10, C.A.D. 411 (1949). There the Court found a grain feed by-product composed of three items was properly dutiable as a single entity rather than segregable according to its component parts. The Court stated the fact that merchandise was composed of different component parts, each of which was *eo nomine* designated in other paragraphs of the Tariff Act, was not the controlling factor and did not establish that the merchandise could not be classified as a whole. Rather, the controlling issue was whether the mixture constituted a single tariff entity. The same rationale is applicable to the case at bar. Accordingly, treatment under General Headnote 7, TSUS, is denied.

Plaintiff's final contention rests on the tenuous argument that item 430.00, TSUS, is not meant to include mixtures of duty-free items. In so arguing, plaintiff cites *Summaries of Trade and Tariff Information*, Vol. VI at 240 (1969), which purportedly limits the scope of item 430.00, TSUS, to merchandise not covered in more specific provisions of the Tariff Schedules. Throughout the Tariff Schedules, however, nowhere is the merchandise at issue more specifically described than under item 430.-00, TSUS. Moreover, resort to legislative history is unwarranted where a statute is unambiguous on its face. *United States v. Corning Glass Works*, 66 CCPA 25, C.A.D. 1216, 586 F.2d 822 (1978). In any event, the 1969 *Tariff Summaries* were prepared subsequent to the statute and thus cannot be considered indicia of Congressional intent. *W.R. Filbin & Co. Inc. v. United States*, 63 Cust.Ct. 200, C.D. 3897, 306 F.Supp. 440 (1969).

As noted *supra*, the classification carries with it the presumption of correctness which has not been overcome. The Court is not persuaded that a mixture of two duty-free items constitutes a single duty-free entity where an unambiguous statute dictates to the contrary. Plaintiff was aware of the statutory limitations involved and nonetheless chose, among available alternatives, to enter the merchandise in a manner which precluded duty-free treatment. The facts of this case and the clear language of the statutory provisions mandate the conclusion herein.

In view of the foregoing defendant's cross-motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. Judgment will be issued accordingly.