**FISHER GALLERIES, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 81–3–00342.**

United States Court of International Trade.

Aug. 22, 1984.

---

Friedlander, Friedlander & Brooks, P.C., Waverly, N.Y. (Mark P. Friedlander, Jr., Waverly, N.Y., at trial and on brief), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, N.Y., Joseph I. Liebman, New York City Atty. in Charge, Intern. Trade Field Office, Commercial Lit. Branch, New York City (Barbara M. Epstein, Wantagh, N.Y., at trial and on brief), for defendant.

FORD, Judge.

This action involves the classification of embroidered silk and tapestry remnants imported from the People's Republic of China. Plaintiff contests the denial of a timely protest filed with respect to the merchandise at issue. Jurisdiction is pursuant to 19 U.S.C. § 1514(a) and 28 U.S.C. § 1581(a).

The subject merchandise was classified by the Customs Service under Item 365.91, Tariff Schedules of the United States (TSUS), and assessed with duty at a rate of 90 percent *ad valorem,* plus 25 percent *ad valorem* under Item 766.30, TSUS. Plaintiff contends the articles involved are properly subject to classification under Item 766.25, TSUS, and entitled to duty-free treatment. Defendant maintains the classification and assessment of duties by the Customs Service was proper.

The statutory provisions pertinent to this matter provide as follows:

Tariff Schedules of the United States, 19 U.S.C. § 1202:

Schedule 3, Part 5, Subpart C

Net furnishings made on a lace, net, or knitting machine, whether or not ornamented; and other furnishings, ornamented:

\* \* \* \* \* \* \* \* \*

Other

\* \* \* \* \* \* \* \* \*

365.91 Other ........................... 90% ad val.
(Column 2 rate)

Schedule 7, Part 11, Subpart B

Ethnographic objects made in traditional aboriginal styles and made at least 50 years prior to their date of entry: and other antiques made prior to 100 years before their date of entry: all the foregoing articles, including such articles which have been repaired or renovated without changing their original form or character:

\* \* \* \* \* \* \* \* \*

766.25 Other .......................... Free

Schedule 7, Part 11, Supbart B

766.30 Any article imported for sale and claimed to be classifiable under item 766.20 or item 766.25, and thereafter determined to be not authentic in respect to the antiquity claimed as a basis for classification thereunder ................................ A duty of 25% ad val. in addition to any other duty imposed on such article under these schedules (Column 2 rate)

---

Code of Federal Regulations

19 CFR § 10.53(d):

Antiques of the age prescribed by items 766.20 and 766.25, Tariff Schedules of the United States, or admitted under the provisions of paragraph (g) of this section, shall be admitted free of duty though repaired or renovated. If, however, an antique has been repaired with a substantial amount of additional material, without changing the original form or shape, the original and added portions shall be appraised and reported as separate entities and the basis for such report shall be plainly indicated on the invoice by the appraiser. In such cases duty shall be assessed on the portion added. If the repairs consist of an addition to an article of a feature which changes it substantially from the article originally produced, or if the antique portion has otherwise been so changed as to lose its identity as the article which was in existence prior to the time prescribed in items 766.20 and 766.25, Tariff Schedules of the United States, the entire article shall be excluded from free entry under item 766.20 and 766.25, Tariff Schedules of the United States.

The imported merchandise consists of embroidered remnants and the borders and backings attached thereto. The parties have stipulated that the center portions of the articles are more than one hundred years old. The question before the Court, therefore, is whether the addition of the non-antique borders and backings has so changed the character and identity of the merchandise to exclude it from duty-free classification as an antique.

Fisher Galleries of Washington, D.C. was among the first art collectors invited to the People's Republic of China following opening of trade relations with the United States. The owners of Fisher Galleries, Mrs. Miriam Fisher Reno and the late Mr. Fisher, first visited China in early 1970. On that occasion, accompanied by Chinese authorities, they were taken to a warehouse outside the city of Peking. There the Fishers were shown antique remnants, which they purchased and brought into this country for resale in their gallery. These remnants were classified as antiques and admitted through customs duty-free. Some years later, the Fishers returned to China and purchased similar antique remnants. To these remnants, however, the Chinese had added borders and backings (sometimes referred to as "envelopes") which were less than 10 years old. It is with these borders and backings attached that the Customs Service denied classification of the remnants as antiques upon entry, thereby initiating the imposition of additional duty under Item 766.30, TSUS.

The sole witness at trial was Mrs. Miriam Fisher Reno, an authority on antique Chi-

nese art.[1] Mrs. Reno testified as to the procedure followed in purchasing the remnants on her trips to China. On both occasions she selected antique pieces from among the choices made available to her. On her second trip, however, the Chinese had added a border and backing to the antique merchandise purchased. Mrs. Reno testified that she had witnessed first-hand the process by which the borders and backings were attached. The "envelopes" would be cut from a bolt of fabric and secured to the remnant with either a single straight stitch, water-soluble glue, or a combination thereof. The witness stated the purpose for this was to protect the fragile nature of the articles during handling.

Upon arrival at plaintiff's gallery, the merchandise would be displayed with the "envelope" attached, ostensibly to protect the remnants from damage during handling. When the sale of a remnant was realized, Mrs. Reno testified that one of the two procedures would be followed. In approximately 80 percent of the sales, the "envelope" would be removed and the remnant set in either a new border or a special double-frame, which holds the glass away from the merchandise for preservation and protection. In these instances, the Chinese border and backing would be discarded.[2] The remaining 20 percent of the remnants were sold with the Chinese border and backing intact. Whether these "envelopes" were subsequently removed was beyond the knowledge of the witness.

Plaintiff asserts the mounting of the antique remnants on the "envelopes" is temporary, for protective purposes only, and results in no new product being formed. Defendant maintains the imported merchandise is not properly classifiable as an antique because the article did not exist in its imported condition prior to one hundred years before entry.

 It is well-settled that imported merchandise must be classified with reference to its condition as imported. *Amoco Oil Co. v. United States*, —— CIT ——, 583 F.Supp. 581 (1984), appeal pending, Appeal No. 84–971; *United States v. Citroen*, 223 U.S. 407, 32 S.Ct. 259, 56 L.Ed. 486 (1911); *Olympus Corp. Of America v. United States*, 72 Cust.Ct. 176, C.D. 4538 (1974). An equally well-established corollary to this rule, however, is found in the doctrine of entireties, a rule of classification resting on the proposition that articles are dutiable in their condition as imported and that the actual nature of the article of commerce must be taken as the determinant. Under the doctrine of entireties, where an article is imported as a unit, but the components retain their individual identities and are not subordinated to the identity of the combination, duty will be imposed on the individual entities of the combination as though they had been imported separately. *Donalds Ltd., Inc. v. United States*, 32 Cust.Ct. 310, C.D. 1619 (1954); *United States v. John Wanamaker, Philadelphia, Inc.*, 20 CCPA 367, T.D. 46132 (1933); *Selsi Co., Inc. v. United States*, 2 Cust.Ct. 371, C.D. 160 (1939); *E.M. Stevens Corp. v. United States*, 56 Cust.Ct. 494, C.D. 2687 (1966), *appeal dismissed*, 53 CCPA 155 (1966).

 It is apparent to the Court that the merchandise involved herein forms no new article having a character and identity different from either of its parts. These articles were purchased, sold, and presently retain their value as antique remnants, irrespective of whether the attached borders and backings are of less-than-antique status. The record indicates the "envelopes" are put on with single-stitch sewing and/or water-soluble glue; that the material for the borders and backings is selected without regard to artistic enhancement; that all

---

1. The witness is an art appraiser for the White House Gift Department and the Department of Commerce and a consultant to the Textile Museum and the Freer Art Gallery in Washington, D.C.

2. The witness testified the combined value of the Chinese border and backing attached to the individual remnants at issue ranged between $1.50 and $6.00, depending upon the amount of fabric involved. The retail value of the individual remnants ranged from $350.00 to $5,000.00.

of the borders and backings which can be accounted for are routinely discarded when the remnants are mounted and the monetary value of this material is negligible. This evidence goes far in support of plaintiff's assertion that the borders and backings were attached for purposes of preservation and protection of the remnants during handling. Moreover, logic dictates the character and identity of articles ranging in value from $350.00 to $5,000.00 are not changed or altered by the addition of material having a maximum value of $6.00.

Defendant's reliance on the holdings in *American Shipping Co. v. United States*, 1 Cust.Ct. 236, C.D. 54 (1938), and *Amoco Oil Co.*, *supra*, is misplaced. In both of those cases, duty-free treatment was denied merchandise to which material had been added to change or enhance the value of the products involved. In the case at bar, there is insufficient evidence to show that the addition of the borders and backing either changed or enhanced the antique nature of the remnant. Any change in the character or enhancement in value of the articles was minimal and merely incidental.

That the doctrine of entireties should be applied to the present situation finds support in *R.J. Godwin's Sons, Inc. v. United States*, 22 CCPA 340, T.D. 47373 (1934). The court therein held lithographic prints and the frames in which they were mounted not dutiable as entireties. Noting the prints could be easily removed from the frames, the Court saw no distinction in principle between the practice of segregating paintings and their frames and the prints and their frames for the purpose of assessing duty. The same principle is applicable in the present case. There is nothing before the Court to indicate the borders and backings serve any purpose other than preservation and protection. Their addition does not, in any material fashion, change or enhance the antique character of the merchandise. The Court finds, therefore, the center portion of the remnants to be segregable from the borders and backings for the purpose of assessing duty.

In view of the foregoing, the remnant portion of the imported merchandise is entitled to classification under Item 766.25, TSUS. As such, the additional duty assessed under Item 766.30, TSUS, is inapplicable and to be refunded.

There being incomplete information before the Court as to the precise value and type of material utilized for the borders and backings of the remnants, this matter is remanded to the Customs Service for the purpose of determining the proper value and classification of those items. Judgment will be entered accordingly.