Mattel, Inc., plaintiff v. United States, defendant

Court No. 80–3–00425

Before Carman, *Judge*.

(Decided December 11, 1984)

*Stein, Shostak, Shostak & O'Hara (Majorie M. Shostak* at the trial) for the plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division (*Deborah E. Rand* at the trial) for the defendant.

Carman, *Judge*: The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from the Philippines and described on the customs invoices as a "base stand and leg holder" for use with the "Pretty Changes Barbie" doll.[1]

The merchandise was classified by the United States Customs Service (Customs) as "[d]olls and parts of dolls, including doll clothing * * * Other," under item 737.22 of the 1978 Tariff Schedules of the United States (TSUS), and assessed with duty at the rate of 17.5 percent ad valorem.

Plaintiff contests this classification and maintains that the merchandise is properly classifiable under item A774.60 of the 1978 TSUS as "[a]rticles not specially provided for, of rubber or plastics * * * Other," and should be entitled to duty-free treatment under the Generalized System of Preferences (GSP).

The parties agree, as does the Court, that the controlling question presented by this case is whether the base stand and leg holder are properly classifiable as "entireties" with the imported dolls as that concept is understood in customs law. In reaching this issue, the Court notes that it must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed. Cir. 1984).

After reviewing the trial testimony, the merchandise taken into evidence, and the applicable authorities, the Court holds that plaintiff has overcome the presumption of correctness attaching to Customs' classification. *See* 28 U.S.C. § 2639(a)(1) (1982). Further, plaintiff has shown its proposed alternative classification to be sustainable. *See Jarvis Clark Co.,* 733 F.2d at 878.

[1] At the trial of this action, the Court accepted an application on behalf of plaintiff to amend paragraph 3 of the complaint as well as all other matters of the complaint pertaining to the "Kissing Barbie" doll and substitute therefor the "Pretty Changes Barbie" doll.

The plastic base stand and leg holder (doll stand) that is the subject of this action, represented in Plaintiff's Exhibit 2, is illustrated below:

## Put BARBIE doll on stand.

Put leg holder
in stand.

Put doll's legs in leg holder

The doll stand is imported in the retail package with the "Pretty Changes Barbie" doll (Barbie doll). The Barbie doll is, of course, an activity toy well known to many American children as well as to adult collectors.[2] Also imported in the retail package were doll clothing, doll toys (brush, necklace, barrettes, earrings, pin, ring), printed instructions, and two wigs.[3] The doll stand, when assembled, holds the doll in an upright position.

Customs found that the doll stand along with the Barbie doll constituted an entirety for classification purposes. That finding is presumptively correct. *See United States* v. *New York Merchandise Co.,* 58 CCPA 53, 58, 435 F.2d 1315, 1318 (1970).

Under the relevant case law pertaining to the doctrine of entireties, a few guiding, though somewhat discordant, principles emerge. First, if the imported articles, when combined, nevertheless retain

---

[2] One witness for the plaintiff, a mechanical engineer employed by Mattel, estimated that every girl in the United States owns approximately two-and-one-half Barbie dolls. *See* Transcript at 62.

[3] The various ornamental items contained in the retail sales package were classified under TSUS provisions for toys and wigs. *See Mattel, Inc.* v. *United States,* 61 Cust. Ct. 75, 287 F. Supp. 999 (1968).

their individual identities and do not become subordinated to the whole, then the articles are not dutiable as an entirety. *Donalds, Ltd., Inc.* v. *United States,* 32 Cust. Ct. 310, 315 (1954).[4] Also, if the articles, in combination, form a new article with a different character or use from the parts, an entirety results. *E.M. Stevens Corp.* v. *United States,* 49 Cust. Ct. 203, 204 (1962), *appeal dismissed,* 53 CCPA 155 (1966). Further, if one part is "merely incidental to the predominant part insofar as the character or use of the combination is concerned," the parts will be considered an entirety. *Id.*

Other cases have noted that if articles have a "natural affinity or relation" to each other, or if one article is "essential to the completeness" of the other, then the articles should be considered an entirety. *United States* v. *John Wanamaker, Philadelphia, Inc.,* 20 CCPA 367, 369 (1933). An early leading case, *Altman & Co.* v. *United States,* 13 Ct. Cust. Appls. 315 (1925), seems to endorse a less rigorous standard. There, the court simply stated that if the parts are designed to be joined and form a "complete article of commerce," they should be treated as entireties. *Id.* at 318.

Finally, courts must be wary of the fluid nature of the doctrine. Other decisions repeatedly have cautioned that analogies to past cases may be unreliable and that the multiple fact patterns possible under the doctrine make mechanical application unwise. *See Charles Garcia & Co.* v. *United States,* 37 Cust. Ct. 117, 119 (1956), *aff'd,* 45 CCPA 1 (1957). Indeed, the Court of Customs and Patent Appeals (now the Court of Appeals for the Federal Circuit) has stated that "the doctrine of entireties, because of its scope, can lead to two contrary conclusions depending on what criteria are given controlling effect." *Miniature Fashions, Inc.* v. *United States,* 54 CCPA 11, 17 (1966). The *Miniature Fashions* court also placed the doctrine in its proper perspective. It is merely an aid in the construction of the tariff laws. The intent of Congress is the one controlling criterion. *See id* at 16.

As discussed in more detail below, the Court finds that in light of the evidence presented, the doll stands are separate, distinct and complete in themselves. The doll stands and the dolls cannot be considered an entirety for tariff purposes because, when merged, they do not form a new and distinct article of commerce having a different character or use. Further, because neither is essential to the completeness of the other, and since neither bears a natural affinity or relation to the other, they must be classified and assessed duty separately. *See Wm. Adams, Inc.* v. *United States,* 5 Cust. Ct. 239, 241 (1940); *see also Issac* v. *Jonas,* 148 U.S. 648, 653 (1892).

Plaintiff presented ample evidence that the doll stands, in and of themselves, have extrinsic value and identity. First, the stands can be used with other dolls from the Barbie line, the Mattel brand, as well as with dolls from other manufacturers. Plaintiff's Exhibit 3 is

---

[4] For the customs law doctrine of entireties to obtain, the articles must be imported together, as in the present case. *See Franklin Indus., Inc.* v. *United States,* 1 CIT 349, 350–51 (1981).

an "India Barbie" doll. It was demonstrated in court that the stand imported with the "Pretty Changes Barbie" doll would also support the "India Barbie" doll. *See* Transcript at 25–26. Further, plaintiff's exhibits 10, 11, 12, and 13, all dolls manufactured by other companies, are capable of being used with the plastic doll stand in issue here. Such interchangeability of use weighs against a finding of entireties. *See Craig Panorama, Inc.* v. *United States,* 59 Cust. Ct. 97, 101 (1967) (batteries not entireties with the imported radios).

In addition, the fact that the stand can be used with other merchandise than that with which it was imported establishes that the stand does not merge with the doll when combined and does not lose its identity to form a new article of commerce. *Id.*

Defendant attempted to establish that somehow the doll stand is a crucial element, unique to the "Pretty Changes Barbie" doll. Defendant's position is that a predominant play feature of the "Pretty Changes Barbie" doll is its ability to be posed. According to defendant, this particular Barbie doll is meant to be displayed with the various clothing and accessories, and the stand is essential to this function. This line of reasoning, however, ignores the larger function of the doll which involves a more active mode of play activity; namely, the changing of clothes and hair styles. The doll stand is in no way "essential" to play activities with the doll. *See* Transcript at 125, 298.[5]

The court also finds that neither component at issue here is essential to the completeness of the other. Upon careful examination of Plaintiff's Exhibit 1, it appears self-evident to the Court, and plaintiff has presented credible evidence on the point, that the Barbie doll is a complete doll in its imported condition. The Barbie doll can be used in play wholly apart from the doll stand. *See* Transcript at 126, 150–51. Its clothing, jewelry, and hair can be changed. It can be posed in numerous positions. Other accessories are available separately and are used with the doll. *See* Transcript at 124. Also, as explained above, the doll stand is a commercially viable entity by itself. Under the applicable legal test, therefore, the two components do not depend on each other for their completeness. *See Hancock Gross Mfg., Inc.* v. *United States,* 60 Cust. Ct. 558, 564–65 (1968). "The mere fact that two articles are designed and constructed to be used together does not necessarily make either a part of the other." *Craig Panorama,* 59 Cust. Ct. at 101.

Defendant presented considerable evidence on the point that the Barbie doll cannot stand independent of some other instrumentality. It was never established, however, that independent standing capability affects the usefulness of the doll from a child's play perspective. It certainly does not render the doll incomplete. Indeed,

---

[5] As to the issue of how a child plays with a Barbie, or any other, doll plaintiff called two witnesses, both employees of Mattel. The witnesses testified that the doll stand was not an important aspect of play, and that, in fact, children rarely played with the dolls by using the stands. Transcript, at 43, 47, 96–97. The Court finds this testimony credible since, in part, it is based on marketing experiments observed by the witnesses.

that the Barbie doll cannot stand without being propped up is largely irrelevant. Only about 5 percent of the various Barbie doll lines are sold with doll stands. *See* Transcript at 55. This certainly indicates that the stands are not essential to the doll's utility as a plaything.

Defendant also pointed to examples of various advertising for the Barbie doll attempting to demonstrate the prominent value of the doll stand. On Plaintiff's Exhibit 1, defendant notes, the side and rear panels of the retail package show the stand in use with the doll. This display, however, is equivocal at best since the doll stand is not depicted on the front of the retail package. The front of the box is the most important for advertising purposes. *See* Transcript at 111–12.

The Court now reviews several of the reported cases on the entireties doctrine to illustrate the proper applications of the concept.

In *Donalds, Ltd., Inc.* v. *United States,* 32 Cust. Ct. 310 (1954), the court was faced with the question whether components of certain inhalers, used for medicinal purposes to clear up congestion, were classifiable as entireties. The merchandise, imported as a single unit, consisted of a holder, cotton core, and inhalant. Applying the doctrine of entireties to the importation, the court determined that the three parts had been subordinated to form a new commercial entity. *Id.* at 315.

Quite naturally, the court, in *Yardley and Co., Ltd.* v. *United States,* 22 CCPA 390 (1934), found that glass jars along with the covering lids, though packaged separately, were entireties for classification purposes.

Where the rate of duty for lithographed paper depended on the thickness of the item, the several sheets of a calendar were considered an entirety. *Nippon Ysen Kaisha* v. *United States,* 12 Ct. Cust. Appls. 5 (1923).

In *Artgift Corp.* v. *United States,* 30 Cust. Ct. 372 (1953), glass domes imported along with metal statuettes were held to be an entirety. The court there found that either of the components, considered alone, was commercially useless. The court also determined that when combined, a new article of commerce was formed. *Id.* at 373–74.

The two component parts of a bell, namely, the outer bell-shaped portion and the metal mallet for striking, are dutiable as an entirety. *United States* v. *F. W. Woolworth Co.,* 23 CCPA 365 (1936).

On the other side of the coin, and perhaps closer to the present controversy, are the cases involving containers. In *United States* v. *Hensel, Bruckmann & Lorbocher, Inc.,* 22 CCPA 281 (1934), the court held that leather binocular cases, imported with the companion binoculars, were not dutiable as entireties since no new article emerged from the combination. *Id.* at 285.

Similarly, bottles for perfume and the boxes in which the bottles would be sold to the ultimate consumer are not assessable as

entireties since each article is a separate, distinct and complete entity. *Coty Processing Co.* v. *United States,* 23 CCPA 117, 121 (1935).

The various components of a croquet set: balls, mallets, and other equipment, are not dutiable as entireties. Each article has a separate identity and value. *See Abercrombie & Fitch Co.* v. *United States,* 10 Cust. Ct. 222, 226 (1943).

Statuettes designed to hold burning incense, imported with the incense itself, is not classifiable as an entirety. Because the two items had uses and identities apart from each other, they were deemed not to be entireties for duty purposes. *See Dow Co.* v. *United States,* 11 Ct. Cust. Appls. 249, 251 (1922).

Recently, the Court of International Trade had occasion to consider the doctrine of entireties. In *Fisher Galleries* v. *United States,* 8 CIT 140, 593 F. Supp. 436 (1984), plaintiff imported certain silk and tapestry remnants from the People's Republic of China. The articles were more than 100 years old, and, therefore, free entry was sought under the provisions for antiques. The issue presented involved whether certain "borders and backings," not of antique origin, and attached to the remnants, disqualified the merchandise from duty-free treatment. 8 CIT at 142, 593 F. Supp. at 438. Judge Ford, employing the doctrine of entireties, held that because the combination created no new article of commerce, the items were dutiable separately. The court found it significant that the relative value between the remnants and the borders was highly disproportionate. The court was also impressed by evidence demonstrating that the borders often were discarded after a sale. Consequently, the remnants were granted duty-free treatment as antiques, and the matter was remanded to Customs for proper classification of the border and backings. *Id.* at 145, 593 F. Supp. at 440.

These cases disclose the natural uses and applications of the entireties doctrine. A jar and its lid; a toy ship in a bottle—this class of merchandise forms a new commercial entity when combined.

Binoculars and a leather case, the items in a croquet set—these are items that retain their individual identities even when combined. They do not merge into the whole to form a new commercial entity having a different character or use. The doll stand and doll fall into this latter category. Each item is separate and complete unto itself. The "Pretty Changes Barbie" doll when employed with the stand does not form a new commercial entity. The stand merely supplements the play activities of the doll. Nor does the stand bear a "natural affinity or relation" to the doll as that term has been traditionally used and understood. *See Selsi Co.* v. *United States,* 2 Cust. Ct. 371, 376 (1939) (weather sets consisting of barometers with thermometers attached not classifiable as entireties).

Therefore, under any of the traditional tests: "function," "use," "individual entities," "newly created entity," "intent," "design," or "commercial unit," the doll stands are not classifiable as entireties

with the Barbie doll. *See Minature Fashions, Inc.* v. *United States,* 54 CCPA 11, 16 (1966).

If Congress had provided for doll stands eo nomine in the TSUS, the Court would have little difficulty in placing the merchandise under such a provision. Nevertheless, the Court is convinced that classification under item A774.60 as articles of rubber or plastics, not specially provided for, is appropriate.

## CONCLUSION

It is the determination of this Court that the presumption of correctness that attaches to Customs' classification has been overcome. The "base stand and leg holder," the subject merchandise of this action, was erroneously classified under item 737.22, TSUS, providing for dolls and parts of dolls; classification is proper under item A774.60 of the TSUS, and the subject merchandise is entitled to duty-free entry under the GSP.

Judgment accordingly.